IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED NATIONAL INSURANCE CO., et al.,<br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>AON LTD., et al.,<br>　　　　　　　　Defendants. | Civ. No. 04-539 |

**MEMORANDUM ORDER**

Presently before the court is defendant Aon's motion (Docket Nos. 99, 100, 101, 102) for leave to appeal the court's denial of its motion for summary judgment.

**I.　　Background**

In this case, plaintiff United National Insurance Company ("UNG") is suing defendant Aon, Ltd. for contribution. It is alleged that Aon, acting as UNG's reinsurance broker, presented material misinformation to RAS, an Italian reinsurer, that induced RAS to reinsure UNG's program of insuring various property and casualty risks located in the United States. On the basis of this misinformation, RAS demanded rescission of the reinsurance contract, and a panel of arbitrators selected by UNG and RAS pursuant to their contract awarded RAS partial relief, an award that has cost UNG millions of dollars. Now, UNG seeks to hold Aon liable to share in that loss, alleging that it, too, wronged

RAS by committing the tort of negligent misrepresentation. If UNG can make out this claim, then, as RAS sees it, Aon and UNG would be joint tortfeasors, and contribution would come into play.

After years of discovery, Aon moved for summary judgment, arguing that, under Pennsylvania law,[1] the tort of negligent misrepresentation does not fit this situation because Aon is not a "professional information provider." Following a lengthy oral argument, this court denied the motion from the bench. *See* Order of Feb. 13, 2008 (Docket No. 95). Now, Aon moves to certify the question for appeal under 28 U.S.C. § 1292(b).

## II.    Legal standard

Parties may appeal final judgments as a matter of right. 28 U.S.C. § 1291. Appealing an interlocutory order, on the other hand, is generally disallowed. An exception to that rule is as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge

---

[1] The parties have agreed to the application of Pennsylvania law in this case, obviating an intriguing choice-of-law analysis.

thereof shall so order.

28 U.S.C. § 1292(b).

Stating that a question is appropriate for interlocutory appeal under this provision is left to the discretion of the district court. *Douris v. Schweiker*, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002). In considering the issue, it is important to keep in mind that piecemeal appeals are disfavored, and should only be allowed in exceptional cases. *Id.*

### III. Is there a controlling question of law as to which there is substantial ground for difference of opinion?

Aon's position is that Pennsylvania law does not impose liability for negligent misrepresentation on a reinsurance broker who negligently provides information to a potential reinsurer. This argument is based on Aon's belief that the Pennsylvania Supreme Court, in adopting into Pennsylvania law Restatement (Second) of Torts § 552, limited that section's reach to "professional information providers." In essence, that section provides for liability when a person, in course of her business, negligently provides false information for another person's use.[2]

Because the court was unpersuaded by Aon's argument and hence denied Aon's

---

[2] The text reads as follows:
> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1).

motion for summary judgment, Aon now seeks to submit the following question for immediate appeal: "Whether Section 552 of the Restatement (Second) of Torts has been adopted in Pennsylvania in all cases, or only in cases involving professional information providers?"

In *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005), the Pennsylvania Supreme Court held that a third-party architect could be held liable in tort to a contractor with whom it did not contract, but whose reliance on the architect's work product was foreseeable, for economic losses flowing from the architect's negligent formulation of architectural plans. In reaching its conclusion, the court relied on Restatement § 552, stating:

> we hereby adopt Section 552 as the law in Pennsylvania in cases where information is negligently supplied by one in the business of supplying information, such as an architect or design professional, and where it is foreseeable that the information will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of information.

*Id.* at 287.

Aon argues that the tort does not apply in Pennsylvania to all persons with pecuniary interests in transactions, as the text of the Restatement states, but rather only to "professional" providers of information. In advancing this view, it relies on (1) certain phrases in the *Bilt-Rite* opinion, (2) a few other Pennsylvania cases, and (3) a number of cases from other jurisdictions, primarily Illinois.

This court, having explained its reasons for disagreeing with Aon at length after

oral argument, will not canvass them at length here. In considering whether the case presents "a controlling question of law as to which there is substantial ground for difference of opinion," 28 U.S.C. § 1292(b), two points stand out.

First, it is worth noting that the meaning of Aon's catchphrase—"professional information provider"—is hardly clear. Aon uses it to mean a person "whose only role in a transaction is to provide information or expertise (as opposed to being a party to the transaction, or an agent for such a party)." Aon's Motion for Leave to Appeal, at 3. In other words, Aon appears to be drawing a distinction primarily between, on the one hand, parties to a transaction and their agents, and, on the other hand, third-party information providers. Yet, by Aon's own admission at oral argument, whether Aon was a "third party" to the transaction is not dispositive.[3] Oral Argument Tr. at 31. Thus, removing the third-party issue, the court's understanding of Aon's argument is that, for the tort to lie,

---

[3] Indeed, in *Bortz v. Noon*, 729 A.2d 555, 563 (Pa. 1999), the Pennsylvania Supreme Court refused to foreclose the possibility of holding a seller's real estate broker liable for negligently misrepresenting facts about the seller's property to a buyer. While the court did not find liability in that case, it took pains to base its decision on a few key facts, rather than the broader proposition that the broker, as the seller's agent, could have no duty to the buyer. *Id.*

In addition, despite Aon's protestations, the case on which Aon primarily relied in pressing the third-party requirement is no longer good law on the point for which it was cited. For support, Aon cited *Rankow v. First Chicago Corp.*, 870 F.2d 356, 362–63 (7th Cir. 1989). In that case, the Seventh Circuit, on a question of Illinois law, applied the third-party requirement expounded upon in *Black, Jackson & Simmons Ins. Brokerage, Inc. v. Int'l Bus. Machs. Corp.*, 440 N.E.2d 282, 284 (Ill. Ct. App. 1982). The Supreme Court of Illinois subsequently overruled *Black, Jackson & Simmons* by name in *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1201 (Ill. 1997), rejecting the third-party requirement as part of Illinois law. In so doing, the Supreme Court necessarily overruled *Rankow* on that point as well, since the Seventh Circuit, powerful as it may be in other respects, has no authority to disagree with the Supreme Court of Illinois on questions of Illinois law. Therefore, Aon's insistence that it did not rely on an overruled case is incorrect.

the defendant must be a provider of professional, expert information. But it is not clear what kind of information counts as "professional" or "expert," and the cases Aon cites provide no firmer definition.[4] Certifying such an amorphous question to the Court of Appeals strikes this court as imprudent.

Second, there is evidence in the record that reinsurance brokers are both professionals and experts. At this stage, the court is hearing very different stories—each backed up by at least some evidence—of how brokers like Aon operate within the industry. UNG portrays Aon's employees as experienced, professional packagers and providers of information, bound by a code of professional ethics, as well as industry norms. This may not make Aon a neutral or third party, but it does make Aon look quite

---

[4] Aon's cases fall into two broad categories.

In a few cases, courts have limited *Bilt-Rite* to design professionals. *E.g.*, *Retail Brand Alliance, Inc. v. Rockvale Outlet Ctr.*, 2007 WL 403885, at *10 (E.D. Pa. 2007); *Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514, 532 n.25 (E.D. Pa. 2006); *Rock v. Voshell*, 2005 WL 3557841, at *2 (E.D. Pa. 2005). This court is unable to read *Bilt-Rite* so narrowly. The operative language from *Bilt-Rite* is "we hereby adopt Section 552 as the law in Pennsylvania in cases where information is negligently supplied by one in the business of supplying information, *such as* an architect or design professional." It seem evident, as a matter of syntax, that "design professional," like "architect," is presented as an example, not as an aggregate and exclusive definition of the entire class of persons subject to § 552 liability.

In the second group of cases, statements were made that Aon interprets as articulating something like a "professional information provider" limitation. But in none of those cases did the court explain what kind of information (or what kind of information provider) counts. *Hults v. Allstate Septic Sys., LLP*, 2007 WL 2253509 (M.D. Pa. 2007) (applying a third-party requirement); *Fleet Nat'l Bank v. Boyle*, 2005 WL 2455673, at *9 n.12 (E.D. Pa. 2005); *In re Asousa P-ship*, 2005 WL 2857983, at *7 n.11 (Bankr. E.D. Pa. 2005); *Teledyne Techs., Inc. v. Universal Stainless & Alloy Prods., Inc.*, 2006 WL 3921253 (Ct. Com. Pl. 2005); *Danlin Mgmt. Group, Inc. v. Sch. Dist. of Phila.*, 2005 WL 2140314 (Ct. Com. Pl. 2005). Indeed, in many of them, the issue was hardly discussed, as it was not dispositive. In any event, neither group of cases gives Aon a clear explanation of how to distinguish between so-called "professional" or "expert" information providers, and lay information providers.

professional. Aon, on the other hand, portrays itself as a mere conduit of information, no more expert than the parties with which it corresponded. Indeed, Aon's argument walks a fine line between, on the one hand, arguing against Aon's expertise without, on the other hand, denying Aon's *raison d'être*. Insurers seeking to place reinsurance hire reinsurance brokers. Though the private market is hardly infallible, one must suspect that the reinsurance brokerage industry exists because it provides some value in connecting insurers and reinsurers, and, on the evidence in this case, it is at least plausible that part of that service is acting as a professional providing information about the risk on which, according to industry norms, the reinsurer expects to be able to rely. Therefore, it is not clear that Aon's proposed question is "controlling." Indeed, it is quite possible that Aon would not be entitled to summary judgment, even if its question were answered in the affirmative.

**IV.    Is it likely that an immediate appeal would materially advance the ultimate termination of this litigation?**

It is not at all clear that presenting that issue to the Court of Appeals at this stage would advance (a) this litigation, or (b) the development of the law. Of course, it is possible that the Court of Appeals would decide that Aon's view of the law is correct, and that under that view it should be awarded summary judgment. That is true anytime a district court denies a motion for summary judgment. But here, on the eve of trial, given the court's view that the factual disputes over Aon's role are intertwined with the parties'

legal dispute, what is most likely to advance the ultimate termination of this lawsuit is the scheduling of a trial. The parties may then either proceed to trial, or proceed to settle the lawsuit.

Should the parties proceed to trial, we will, within a matter of months, have a complete disposition that will allow the Court of Appeals, if an appeal is taken, to consider this area of the law with the benefit of a comprehensive determination of Aon's role in the transaction. This course seems, to this court, far more likely to end this litigation, in either direction, in a timely fashion.

## V.  Conclusion

None of this is to say that Aon's view of the law is inherently unreasonable. The distinction Aon proffers between lay and professional information providers might, with some refinement, be workable; indeed, it may be one that the Supreme Court of Pennsylvania, as a common-law court, would see fit to draft into Pennsylvania law. But, at present, the proposed distinction is grounded in very little.

At this stage, with factual issues whose elucidation could aid the Court of Appeals (or, should certification be in this case's future, the Supreme Court of Pennsylvania) in further clarifying the tort of negligent misrepresentation, it seems far more sensible, as we are on the eve of trial, to resolve the factual disputes first, and then, should an appeal from either side turn out to be desirable, present the case to the Court of Appeals with all of the intricacies of Aon's role in the transaction ironed out. This court is not unaware of

the expense of trial, but, weighing that against the additional delay and expense attendant on an interlocutory appeal (and the likelihood of either an affirmance or a remand for factual findings), it seems the better course.

For these reasons, the motion for leave to appeal pursuant to 28 U.S.C. § 1292(b) will be denied.

\* \* \* \* \*

AND NOW, this 7th day of April, 2008, for the foregoing reasons, Aon's motion for leave to appeal is DENIED.

BY THE COURT:

/s/ Louis H. Pollak

_____

Pollak, J.