IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED NATIONAL INSURANCE CO., et al., <br><br> Plaintiffs, <br><br> v. <br><br> AON LTD., et al., <br><br> Defendants. | Civ. No. 04-539 |

**MEMORANDUM / ORDER**

The court has before it two requests by the plaintiffs, in the form of a letter (undocketed) and a motion (Docket No. 159), to admit evidence previously excluded – as well as the responses from the defendants.

**I.   Background**

In this complex litigation involving reinsurance agreements, both sides have sought to admit multifarious and voluminous evidence. These endeavors likewise have generated legion objections and motions to exclude. Starting two months ago, the court began issuing rulings that identified the items of evidence that would be excluded or that would be admitted subject to certain limitations. Some testimony and some exhibits were excluded with the caveat that the proponent could undertake to cure the defect and seek admission a second time. Accordingly, plaintiffs now seek reexamination of five pieces

1.

of evidence following efforts to remedy earlier shortcomings in the evidence. Defendants have taken exception to plaintiffs' requests.

First, plaintiffs seek admission of Pre-Trial Exhibit 135 (Trial Exhibit 46) and pages 322:19 - 324:9 from the deposition of Daniele Casati. The exhibit is a faxed note from Carole Fleischman of Alexander Howden North America, one of the corporate defendants, to J. Renaud at Gay & Taylor, and the pages from the deposition are Casati's answers to questions regarding this same fax. Plaintiffs originally sought admission of the exhibit using its distinctive markings as circumstantial evidence of authenticity. The court excluded the exhibit for lack of authentication, ruling that it needed "markings plus more" – some additional circumstances or testimony that supported its reliability more substantially. Mem./Order of Sept. 18, 2008 at 6. The court excluded the taped deposition testimony for the reason that it focused on this excluded exhibit.

Second, plaintiffs seek admission of Pre-Trial Exhibits 571 and 598 (Trial Exhibits 864 and 866). The exhibits are extensive financial tables, purportedly generated from UNG's financial system and allegedly relevant to the litigation. Pls.' Mem. (Docket No. 146) at 53-54. The court excluded these for lack of foundation, but suggested, based on plaintiffs' assertion in defense of the exhibits, *id.*, that trial witness Kevin Tate could seek to authenticate them at trial. Mem./Order of Sept. 18, 2008 at 7. Plaintiffs have opted to seek admission prior to Tate's trial appearance.

Finally, plaintiffs seek admission of the entirety of Pre-Trial Exhibit 1 (Trial Exhibit 863). Plaintiffs asserted that this bulky exhibit represents a summary of various

bordereaux as well as information in Pre-Trial Exhibit 571; they sought admission of the exhibit under Fed. R. Evid. 1006. Pls.' Mem. (Docket No. 146) at 24. The court originally admitted this exhibit under that rule, but revised its opinion to admit only portions of the exhibit that do not rely solely on any excluded evidence, such as Pre-Trial Exhibit 571. Mem./Order of Sept. 26, 2008 at 3-4.

## II. Analysis

Evidence must be authenticated to become admissible at trial; the proponent of the evidence must, thereby, advance some proof to the court that the evidence is what its proponent states it to be. Fed. R. Evid. 901(a). The burden of authentication is light. *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985). The proponent can authenticate evidence in a variety of ways including testimony by a witness with direct knowledge of the evidence's authenticity or by pointing to "distinctive characteristics" that, under the circumstances, suggest reliability. Fed. R. Evid. 901(b), (b)(1), (b)(4). Further, evidence, otherwise subject to exclusion as hearsay, that comprises records of "regularly conducted business activity" is admissible pursuant to Rule 803(6). That rule requires authentication of the records by the testimony of "the custodian or other qualified witness" or by various forms of self-authentication. Fed. R. Evid. 803(6).

A. *The Fleischman Fax and related deposition testimony*

Pre-Trial Exhibit 135 (Trial Exhibit 46) is a facsimile sent by Carole Fleischman, then a Howden employee, on a company fax sheet. Plaintiffs have presented a sworn

affidavit by Fleischman stating that she recognizes the communication, that she wrote it, and that the exhibit is authentic.

In opposition, defendants argue that the court, in its prior ruling, required authentication of this exhibit "at trial," rendering authentication via affidavit ineffective *ab initio*. They go on to contend that admission on this "barebones affidavit" would constitute the "height of unfairness" because they would be denied the opportunity to cross-examine Fleischman. Finally, they maintain that the lack of signature on the fax and the fact that the defendants themselves did not produce the document (or a copy of it) strongly suggests that the document is unreliable.

The court will admit this exhibit based on both the affidavit and the fax's distinctive markings. These proofs easily clear the "slight burden," *McQueeney*, 779 F.2d at 928, of authentication. While the court notes defendants' inability to cross-examine Carole Fleischman, this is not a reason to exclude this evidence under Rule 901. Presumably, both sides could have sought to include Fleischman as a trial witness. Both sides certainly had ample opportunity to question the deposition witnesses about this document and to establish its importance and weight – or lack thereof.

Because they were excluded on grounds of the exclusion of the Fleischman document, pages 322:19 - 324:9 from the Casati deposition likewise are now admissible.

B.    *The exhibits from the UNG financial system*

Plaintiffs contend that Pre-Trial Exhibits 571 and 598 (Trial Exhibits 864 and 866) were generated from UNG's financial computer system and represent admissible excerpts

4.

from the company's ongoing record-keeping. Though Kevin Tate provided some statements of authentication and foundation in his deposition of February 27, 2008, the court found this to be insufficient support. Any portions of Pre-Trial Exhibit 1 (Trial Exhibit 863) derived solely from those exhibits were likewise excluded. Plaintiffs now return with a formal motion arguing the admissibility of all three exhibits. Plaintiffs state that the first two are admissible under Rule 803(6) and that Exhibit 1/863 will be fully admissible once the first two are admitted. Plaintiffs' motion includes a detailed affidavit from Tate describing UNG's WINS computer system, his knowledge and oversight of its operation, and his attestation that the previously-excluded exhibits are what the plaintiffs claim them to be. Plaintiffs contend that Tate is qualified to authenticate the exhibits through this affidavit under Rule 803(6).

Defendants argue the exact opposite — that Tate is not qualified to authenticate this evidence. They state that his earlier testimony reveals that he is "essentially ignorant" regarding the exhibits and that UNG must produce a knowledgeable person who can be cross-examined about the "provenance, content, and meaning" of this evidence. They point to multiple places in Tate's deposition where he said things like the following:

> I don't specifically know who prepared this spreadsheet. And by that I specifically mean I do not know if it was run off our WINS system or if it was prepared by someone within my reinsurance accounting department.

Deposition of Kevin Tate of Feb. 27, 2008 at 135:7-12.

Defendants also contend that the evidence is fundamentally untrustworthy, pointing to discrepancies between the different exhibits. Specifically, defendants point to differences between figures in Exhibit 1/863 and Exhibit 571/864 and direct the court to Kevin Tate's statement that the differences arose because the numbers on one were generated by one department at UNG and the numbers on the other by a different department. Defs.' Mem. in Oppos. at 6.

The court will examine whether Tate is qualified to authenticate these exhibits. To begin with, it is well settled in the Third Circuit that the term "other qualified witness" under Rule 803(6) should be construed broadly. *United States v. Console*, 13 F.3d 641, 657 (3d Cir. 1993). The actual custodian of the records need not furnish the foundational evidence; rather, someone familiar with the record-keeping system who has the ability to attest to the records' foundation will suffice as a qualified witness. *Id.* The Third Circuit requires that such a witness "demonstrate that the records were made contemporaneously with the act the documents purport to record by someone with knowledge of the subject matter, that they were made in the regular course of business, and that such records were regularly kept by the business." *United States v. Pelullo*, 964 F.2d 193, 201 (3d Cir. 1992).

The other potential hurdle to admission here, also from Rule 803(6), is that the court can exclude business records if the source of information or circumstances of preparation suggest untrustworthiness. The Third Circuit has examined this issue and provided the following guidance:

6.

> The principal indice of reliability is that reliance on routine record keeping is essential to ongoing business activity. Deficiencies in the manner in which specific records are kept may be called to the court's attention in carrying the burden of showing that the "method or circumstances of preparation indicate lack of trustworthiness." Given the separate treatment in Rule 803(6) of untrustworthiness, we think the regular practice requirement should be generously construed to favor admission.

*In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 289 (3d Cir. 1983), rev'd. on other grounds, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

After reviewing the affidavit, as well as arguments on both sides, the court concludes that Kevin Tate is a qualified witness and that his sworn statement properly authenticates Pre-Trial Exhibits 571 and 598 (Trial Exhibits 864 and 866). Tate attests that he served as CFO of United National for almost twenty years – including throughout the period at issue in this litigation. Tate Dep. at ¶ 3. He managed all the operations that led to the figures kept in the WINS system as well as overseeing the information technology department that maintained and managed WINS. *Id.* His affidavit provides a detailed description of how the WINS system operated during the time at issue here and through to the present day. *Id.* at ¶¶ 6-9. Tate goes on to attest concerning Exhibit 571/864 – based on his knowledge and on his authority and managerial responsibility within UNG – that the information the exhibit presents was (1) recorded contemporaneously with the activities described, (2) logged at the instruction of UNG staff with direct knowledge of the information and activities, and (3) kept and maintained as a regular part of UNG's business activities. *Id.* at ¶¶ 10-11.

As to Exhibit 598/866, Tate attests to much the same with the additional note that the exhibit has been updated as of July 31, 2008. *Id.* at ¶ 12-14. The original version of the exhibit covered a period ending November 30, 2007. *Id.* at 13. The court notes that Tate ceased serving as a full-time employee of United National's parent company in May 2008. *Id.* at ¶ 2. Presumably, he now lacks the direct managerial authority over this information that he once had – but he attests to the fact that he has been retained by UNG as a consultant concerning his position and employment since then. *Id.* The court is persuaded that his past positions and current engagement by UNG afford him the knowledge and access necessary to verify this updated version of this exhibit.

For both exhibits, Tate swears that the WINS system that produced them is a commonly-used system in the insurance industry; has been used by UNG for years; is considered reliable by the UNG companies; and is subject to external audit. *Id.* at ¶¶ 7-9, 11, 14. Tate likewise attests that WINS reports are furnished to UNG's clients and business partners regularly, permitting them to raise concerns and challenge inaccuracies. *Id.* at ¶ 9.

Tate's authentication of the challenged exhibits meets the test for the "qualified witness" established under *Console*, 13 F.3d at 657. Tate was in a position to be familiar with the activities recorded by WINS and with the WINS system itself. As required by *Pelullo*, 964 F.2d at 201, the information here was made contemporaneously with the events and activities it describes; was kept on a regular basis; and was maintained as a common practice of UNG. Tate's statements likewise establish that the WINS system

8.

and these printouts are trustworthy under *Japanese Electronic Products*, 723 F.2d at 289. Indeed, UNG's business appears to hinge substantially on the regular use and proper working of the WINS system and the ability of managers like Kevin Tate to understand the documents it produces.

The fact that Tate expressed uncertainty concerning these exhibits during his deposition testimony does not render him "unqualified" under Rule 803(6). The rule focuses on whether a person, by virtue of direct knowledge or other valid familiarity with the system of records, can provide an acceptable foundation for the evidence. Neither Tate nor any other 803(6) authenticator need demonstrate continual and immediate recall concerning business documents. Rather, such an individual need only be in a position to inquire of them, learn of them, verify them with authority, and present an acceptable foundation for their admission. Tate's checkered recall earlier in 2008 might comprise grounds for questioning the weight a jury should give his trial testimony – or even the weight a jury should give the exhibits themselves – but it does not lead to the conclusion that he cannot verify and authenticate them for admission at trial.

Similarly, the charge that two of the exhibits contain numerical discrepancies does not automatically indicate lack of trustworthiness in the records. To the contrary, Tate's affidavit and other circumstantial evidence suggest that the WINS system and these exhibits should be viewed under Rule 803(6) and *Japanese Electronic Products* with a relatively high level of trust. Defendants may have grounds to question the reliability of plaintiffs' assertions concerning these exhibits and, again, to question the credibility of

9.

Kevin Tate as a witness at the trial. These are different issues from the narrow questions of whether Tate can authenticate these exhibits, whether he did so properly, and whether the business records are trustworthy. The court does not find any of the core untrustworthiness here that would warrant exclusion of these exhibits under Rule 803(6).

Accordingly, the court finds that the plaintiffs now have properly authenticated Pre-Trial Exhibits 571 and 598 (Trial Exhibits 864 and 866) through Kevin Tate's affidavit as a qualified witness. In keeping with the court's Mem./Order of Sept. 26, 2008, admission of these exhibits clears Pre-Trial Exhibit 1 (Trial Exhibit 863) for admission in its entirety.

### III. Conclusion

And now, this 15th day of October, 2008, for the reasons stated above, it is hereby ORDERED that:

1. Plaintiffs' Pre-Trial Exhibit 135 (Trial Exhibit 46) is admissible at trial.

2. Pages 322:19 - 423:9 of the Casati deposition are admissible at trial.

3. Plaintiffs' motion is GRANTED and thereby plaintiffs' Pre-Trial Exhibits 571 and 598 (Trial Exhibits 864 and 866) are admissible at trial, and plaintiffs' Pre-Trial Exhibit 1 (Trial Exhibit 863) is now admissible in its entirety at trial.

BY THE COURT:

Pollak, J.