## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED NATIONAL INS. CO., et al.,

                    Plaintiffs,

    v.

AON LTD., et al.,

                    Defendants.

Civ. No. 04-539

## OPINION

July 24, 2009                                         Pollak, J.

       The plaintiffs in this diversity action (hereafter "plaintiff" or "UNG"), a group of American corporations, have submitted a post-trial Motion To Alter or Amend the Judgment To Add Prejudgment Interest and/or Damages For Delay (docket no. 216) as well as a memorandum supporting the motion (docket no. 226). Defendants (hereafter "defendant" or "Aon"), a group of English corporations, have responded (docket no. 231), and UNG has submitted a reply (docket no. 239). The motion is ripe for disposition.

## I.    __Background__[1]

       In 1993, Aon (acting chiefly through its subsidiary Alexander Howden) served as

---

[1] Unless otherwise indicated, the facts in this section are derived from the Preliminary Jury Instructions (docket no. 164) at 2-4 or the Jury Instructions (docket no. 197) at 7-9. The court developed these documents from the record. The parties participated in the drafting of the instructions.

UNG's broker in soliciting Riunione Adriatica di Sicurta, S.p.A. (hereafter "RAS," an Italian corporation) to become a reinsurer to UNG on a large program that furnished insurance to building contractors in the United States.  Broadly speaking, a reinsurer provides insurance to the insurance company that has issued the underlying policies and is directly accountable to the insured persons or entities.  Insurance companies may decide to purchase reinsurance in order to be reimbursed, in whole or in part, if they are required to pay losses under the policies that they have issued.  RAS entered into a reinsurance agreement with UNG for the time period of September 2, 1993 to September 2, 1994 that involved two major coverage provisions.  The claims filed by insureds under the building contractors program were considerable and exceeded the income generated from premiums.

In 1999, RAS commenced an arbitration against UNG seeking to rescind the reinsurance agreement on the ground that, as RAS alleged, it had been misled into the agreement by UNG or Aon or both, a claim which UNG denied.  Aon was not a party to the arbitration, but Aon provided information and resources to UNG for its defense.  Def. Mem. at 16.  UNG also approached Aon about Aon's potential responsibility in the conflict.  Reply Decl. of Jerome C. Katz ¶ 15.

On October 1, 2002, the arbitration panel awarded RAS partial rescission of the reinsurance agreement.  RAS was instructed to return the applicable reinsurance premiums to UNG, and RAS was understood to no longer bear any financial

2.

responsibility for claims by insureds that arose under the rescinded portion of the agreement.

Invoking this court's diversity jurisdiction, UNG, on February 9, 2004, filed suit in the Eastern District of Pennsylvania against Aon for either indemnity or contribution. Under its indemnity claim, UNG sought "to recover 100% of its economic losses resulting from the Arbitration[,]" including attorneys' fees and expenses incurred in that earlier action.[2]  UNG's indemnification theory was that Aon, acting as UNG's agent, committed the tort of negligent misrepresentation against RAS and that UNG only bore liability as a passive tortfeasor.  Attempts at settlement were not fruitful.  Reply Decl. ¶¶ 15-19.

Following more than four years of pretrial activity, a jury trial commenced in October 2008.  Order of Sept. 10, 2008 (docket no. 148).  During the second week of the trial, the court requested the parties to make a further attempt at settlement, but no resolution developed, even after a follow-up conference in chambers.  Reply Decl. ¶ 16-17.  Presentation of the evidence and arguments of both sides required the better part of nine weeks.  Order of Dec. 4, 2008 (docket no. 213).  The jury, instructed on the

---

[2]  Under its contribution claim, UNG sought damages for whatever portion of the losses a fact-finder determined was Aon's responsibility.  Pennsylvania does not permit an award of attorneys' fees or costs from the predicate dispute to be included in an award of damages under a contribution claim.  *See* 42 Pa. Const. Stat. § 8324; *Lavelle v. Koch*, 617 A.2d 319, 323 (Pa. 1992) ("a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception.").

applicable Pennsylvania law,[3] returned a verdict for UNG on its indemnification claim and awarded the full amount of damages requested by UNG: $16,871,596 in losses resulting from the arbitration decision and $7,000,530 in attorneys' fees and costs occasioned by the arbitration.  Verdict Form (docket no. 212).

Following the verdict, UNG filed the instant motion, seeking a discretionary grant of interest on its awarded damages pursuant to Fed. R. Civ. P. 59(e) and Pennsylvania law.

II.   **Analysis**

There are three areas of contention regarding plaintiff's motion: whether UNG has legal recourse, and is entitled, to a prejudgment interest award; what rate of interest should apply; and what portion of its damages is subject to such an award.

A.   The availability of an interest award in this case

The initial question is whether Pennsylvania law permits UNG's request for interest on its damages.  The most illuminating case-law discussion of the state's prejudgment interest doctrine of which I am aware is in *Lexington Ins. Co. v. Abington Co.*, 621 F. Supp. 18 (E.D. Pa. 1985),[4] which concisely canvasses the various avenues of

---

[3]  One of the few matters of consequence that the parties have agreed upon in the course of this lengthy and sharply contested litigation is that the governing substantive law is Pennsylvania law.  But they have not agreed on the content of that law.

[4]  *Lexington* is an opinion by my senior colleague Judge Ditter, a respected state court judge before commencing his now almost four decades of distinguished service as a federal judge.

this area of law with useful clarity:

>   The law of Pennsylvania with respect to "prejudgment interest" is, as Judge Adams stated, "far from perspicuous." *Peterson v. Crown Financial Corp.*, 661 F.2d 287, 293 (3d Cir. 1981). The confusion appears to stem from the fact that Pennsylvania limits an award of interest as such to specified cases involving breach of contract, but allows for an interest-type remedy for delay in certain other cases. *See Hussey Metals Division v. Lectromelt Furnace Division*, 417 F. Supp. 964, 968-69 (W.D. Pa. 1976), *aff'd* 556 F.2d 566 (3d Cir. 1977) ....

>   Interest, as such, must be awarded at the statutory rate in cases of breach of contract, where the plaintiff has established that the defendant defaulted on a promise to pay a definite sum of money or render performance the value of which is ascertainable with exactitude. [citations omitted]

>   While interest, as such, is not available in other actions, three "interest-type" remedies have developed to provide redress for delay or detention. *See Hussey Metals Division*, 417 F. Supp. At 968-69 .... First, Pa. R. Civ. P. 238 provides a formula for calculating delay damages in cases in which the underlying claim was one for bodily injury, death, or property damage.

>   Second, a judicially-created rule to compensate for delay has been developed for certain unintentional tort cases falling outside the ambit of Rule 238. *See Citizens Natural Gas Co. v. Richards*, 130 Pa. 37, 18 A. 600 (1889). *See also American Enka Co. v. Wicaco Machine Corp.*, 686 F.2d 1050 (3d Cir. 1982). In *Richards*, the court noted that interest cannot be recovered in tort actions, but recognized,

> >   [T]here are cases sounding in tort, and cases of unliquidated damages where not only the principle on which the recovery is to be had is compensation, but where, also, the compensation can be measured by the market value or other definite standard. Such are cases of the unintentional conversion or destruction of property, etc. Into these cases the element of time may enter as an important factor, and the plaintiff will not be fully compensated unless he receive not only the value of his property, but receive it, as nearly as may be, as of the date of his loss.... It is never interest as such, nor as a matter of right, but compensation for delay, of which the rate of interest affords a fair legal measure.

*Id.* at 600. The Third Circuit has held that these common law damages for

delay are measured by reference to the statutory rate of interest. *See American Enka*, 686 F.2d at 1057.

Finally, the Third Circuit has held that Pennsylvania law affords a plaintiff damages for delay for "wrongful detention" of money. *See Peterson*, 661 F.2d at 287. Based on a theory of precluding unjust enrichment, this approach provides a court with discretion to award damages at a rate in excess of the statutory rate. *See id.* at 297. *See also American Enka*, 686 F.2d at 1057 n. 5.

*Id*. at 19-20.

UNG contends that it deserves interest on its damages under either the *Richards* theory or the unjust enrichment (what I will call the 'restitution') theory, but appears to prefer that the court apply the restitution theory which would allow interest above the statutory rate. Under *Richards*, UNG argues that (1) its indemnity action sounds in tort; (2) its damages "were known and were calculated with great precision at trial"; (3) Aon delayed UNG's recovery; and (4) full compensation for UNG's losses requires an award of interest. Pl. Memo at 3, 7, 9; Pl. Reply at 27. Under its restitution argument, UNG states that (1) indemnity is recognized as a restitutionary remedy in Pennsylvania; and (2) Aon, from the time of the arbitration award, has enjoyed the use of money which, given Aon's negligence, Aon should have rightfully paid to UNG. Pl. Memo at 10-11; Pl. Reply at 20-21.

Aon contends that neither of the two theories can be applied to this case. Aon argues that *Richards* is inapposite because UNG prevailed on "an equitable action" of indemnity, not a tort claim, and the damages in the instant matter were heavily disputed and not readily ascertainable. Def. Memo at 5-7. Pointing to the phrase "wrongful

6.

detention of money" used in *Lexington Ins.*, 621 F. Supp. at 20, Aon argues that a

restitution theory cannot apply because Aon never improperly possessed or used money

given to it by UNG and thus enjoyed no unjust enrichment.  Def. Memo at 8-10, 12.  Aon

also argues, concerning the broader equitable review, that (1) it committed no intentional

wrongdoing; (2) it acted in a fair manner during the UNG-RAS arbitration and the UNG-

Aon litigation; (3) UNG prosecuted its claims in a dilatory manner; and (4) UNG is a

wealthy entity with "no pressing need" for additional damages.  *Id*. at 13-16.

I will apply the restitutionary theory to this motion and will forego analysis of the

*Richards* theory.[5]  Pennsylvania courts, and federal courts applying Pennsylvania law,

have deemed the restitutionary theory appropriate in a variety of cases that fall under

different equitable doctrines.  *See, e.g., Kaiser v. Old Republic Ins. Co.* , 741 A.2d 748,

755 (Pa. Super. Ct. 1999) (subrogation claim in primary insurance context); *Gurenlian v.

Gurenlian*, 595 A.2d 145 (Pa. Super. Ct. 1991) (equitable action seeking a constructive

trust); *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 769 (3d Cir. 1985) (indemnity claims in

an insurance dispute).  The parties agree that UNG's indemnity claim was equitable in

nature, and Pennsylvania law supports such a conclusion.  *See City of Wilkes-Barre

Kaminski Bros, Inc.*, 804 A.2d 89, 92 (Pa. Commw. Ct. 2002) ("The right to indemnity

---

[5]  *Richards* may well have application to this case, but it is unnecessary to examine
it given the court's discretionary authority under the restitutionary framework for
prejudgment interest to award interest either at the statutory rate or a rate of the court's
determination.  *See* Part II(B) *supra*.

arises by operation of law and will be allowed where necessary to prevent an unjust result. It is a common law equitable remedy ...").

Aon cuts a fine line in (a) arguing that UNG cannot receive interest under *Richards* because its claim is restitutionary (as opposed to solely grounded in tort) and, in addition, (b) contending that the restitution theory (or 'detention of money' as Aon prefers) does not apply because Aon never received funds directly from UNG that must be disgorged.  I disagree with this view.  The instant matter has much in common with *Kaiser*, 741 A.2d at 754-55, where the Pennsylvania Superior Court affirmed an award of prejudgment interest.  In that case, the restitutionary theory applied to a subrogation claim, which, though certainly different in context, is a remedy that has much in common with indemnification in tort.[6]

In terms of whether interest is merited, I conclude that an award of interest on the damages found by the jury is necessary to effect full restitution for UNG.  *See Sack v. Feinman*, 413 A.2d 1059, 1065 (Pa. 1980) ("Whenever the defendant holds money or

---

[6] *Compare Kaiser*, 741 A.2d at 754 ("Subrogation is an equitable doctrine involving the right of legal substitution and may take place with or without contractual agreement between the parties.  It is granted as a means of placing the ultimate burden of a debt upon the one who in good conscience ought to pay it, and is generally applicable when one pays out of his own funds a debt or obligation that is primarily payable from the funds of another...") (internal citations omitted), *with  Kaminski Bros.*, 804 A.2d at 92 ("[indemnity] shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault....  It is a fault-shifting mechanism that comes into play when a defendant held liable by operation of law seeks to recover from a defendant whose conduct actually caused the loss.").

property that belongs in good conscience to the plaintiff, and the objective of the court is to force disgorgement of [defendant's] unjust enrichment, interest upon the funds or property so held may be necessary to force complete restitution.").  Further, I find that Aon's broader equitable arguments against interest and UNG's responses, both of which are addressed below, are not influential to this determination.

Each side has charged the other with dilatory litigation.  The charges are unpersuasive.  On the one hand, it would be improper to view Aon in a negative light for defending itself to the utmost, so long as such vigorous defense was not substantially motivated by a desire to delay or obstruct the administration of justice.  The court finds no such wrongful motive here.  Despite the decisively favorable outcome for UNG, this suit presented difficult questions of law and fact that opened considerable grounds for argument.  On the other hand, I see no merit in Aon's assertions that UNG "dithered" in its prosecution of this case.  Def. Memo at 15.  On balance, the time spent by both sides on the litigation does not affect the consideration of whether interest is appropriate.

UNG also argues that Aon's unwillingness to engage in settlement negotiations resulted in compensable delay.  Pl. Reply at 25-25; Reply Decl. ¶¶ 14-19.  Pennsylvania cases suggest that the parties' willingness to engage productively in the process of settlement or other modes of alternative dispute resolution is a proper element in a court's consideration of a prejudgment interest request.  *See Robert Wooler Co. v. Fidelity Bank*, 479 A.2d 1027, 1035-36 (Pa. Super. Ct. 1984) (collecting cases and concluding that "all

9.

circumstances relevant to the delay must be developed and analyzed" (internal citation omitted)); *Marrazzo v. Scranton Nehi Bottl'g Co.*, 263 A.2d 336, 338 (Pa. 1970).  I am not convinced, however, that the circumstances surrounding efforts at settlement of this case add weight in either direction on the issue of prejudgment interest.

The further equitable considerations raised by Aon are inapposite or unsupported by the record.  Intentional wrongdoing by a defendant does not appear to be required for an award of interest.  *See Kaiser*, 741 A.2d at 755 (affirming a restitutionary award of interest on a subrogation claim that involved no underlying allegations of intentionality or wrongful scienter).  Further, UNG's relative wealth is irrelevant.[7]

B.     The Rate of Interest

Plaintiff requests interest on its judgment either at the six percent rate established by 41 Pa. Const. Stat. § 202 or at a rate based on "UNG's internal rate of return on investments in bonds over the relevant period of time" as calculated and attested to by plaintiff's CFO.  Pl. Mem. at 5, 14.  Under UNG's calculations of when interest applied to the various components of its damages, the statutory rate would result in $8,299,984.59 in interest, and the bond rate would result in $9,052,109.18 in interest.

Aon urges that if interest is to be awarded, the court should employ a rate "no greater than 2.5% per annum, the average rate available in the money market at the

---

[7]  Aon has provided no doctrinal support for its three-sentence argument that interest is unwarranted in light of UNG's financial strength.  Def. Mem. at 16.

relevant times." Def. Mem. at 17, 21. Aon contends that a rate of six percent (or higher)
"would have been a pipe dream in the money markets as they actually existed during the
period at issue. UNG should not receive an interest rate that is the fruit of fantasy; it
should only receive [a rate] dictated by the 'economic realities.'" *Id*. at 18. Aon has not
offered a calculation of the maximum amount of interest available to UNG at Aon's
proposed rate. Instead, Aon goes on to suggest an interest award ceiling of $1,687,159.60
which "consists of $16,871,596 (i.e. the amount awarded by the jury without regard to
attorneys fees), multiplied by 10% (i.e., four years of prejudgment simple interest at 2.5%
per annum)." Def. Mem. at 24, n. 10 (Aon's arguments that UNG should not receive
interest on its full damages are explored *infra)*.

In response to Aon's contentions regarding the interest rate, UNG submitted
another number that reflects the return it would have seen had it invested the money at
issue here "in its entire portfolio of assets ...". Pl. Reply at 37. Under UNG's
calculations, this rate would result in $7,351,932.19 in interest.

For the reasons that follow, the court, in the exercise of its discretion, will employ
the Pennsylvania statutory rate of six percent. The circumstances of this suit and the
applicable case law suggest that reliance on the legislature's statutory determination
would be just and prudent here.

Under the restitutionary framework, Pennsylvania courts, and federal courts
applying Pennsylvania law, appear to award prejudgment interest at a rate above or below

11.

the statutory rate when the facts of the specific case, or the public policies underpinning the issues involved, clearly suggest that such a course is warranted.  *See Park v. Greater Delaware Valley Sav. & Loan Ass'n.*, 523 A.2d 771, 776 (Pa. Super. Ct. 1987) (affirming an interest award at five and one-half percent, "the rate of the mortgage agreement" at issue in the restitution action); *Rizzo v. Haines*, 515 A.2d 321, 324-25 (Pa. Super. Ct. 1986) (ruling that, in a case of fraud by an attorney, the higher market rate of interest, which "ranged as high as twenty percent during the relevant period of time[,]" should apply rather than the statutory rate); *Lexington Ins.*, 621 F. Supp. at 21 (awarding interest at a market rate, higher than the statutory rate, in a case where defendants intentionally retained and used premium payments belonging to plaintiff); *In re Kenin's Estate*, 23 A.2d 837, 845 (Pa. 1942) (awarding interest at two and one-half percent in a case where a trustee erroneously detained funds that should have been distributed to the executors of a decedent's estate).

In restitution-theory cases where the circumstances, or the broader policies involved, do not militate for an adjusted rate, courts have elected to employ the statutory rate.  In *Gurenlian*, the plaintiff appealed a trial court's discretionary award of prejudgment interest at the statutory rate, contending that the award was too low to effect full restitution.  595 A.2d at 148.  The Superior Court declined to reverse the interest decision, stating that:

> The defendants in the instant case, unlike the defendants in *Rizzo, Sack*, and *Lexington*, did not fraudulently, intentionally, and wrongfully procure

> or withhold appellant's money.  Further, unlike the plaintiff in *Peterson*,
> appellant has not demonstrated that an award of interest at the market rate
> is necessary either to compensate him for losses sustained or to force the
> defendants to disgorge profits realized.

*Id*. at 149.  *Kaiser*, discussed *supra*, is also instructive.  *Kaiser* involved an equitable claim of subrogation in an insurance dispute.  741 A.2d at 750.  As previously noted, subrogation and indemnification have much in common as equitable remedies.  In *Kaiser*, the plaintiff requested an award of interest at six percent, and the Superior Court affirmed the trial court's grant of this request as a proper exercise of discretion.  *Id*. at 751, 755.

In the instant matter, both sides have made plausible arguments for their non-statutory interest rate requests.  UNG has offered viable evidence to support its proposed "bond rate" or "total investment" rate (which, I note, the appellant in *Gurenlian* lacked entirely, 595 A.2d at 149), but Aon likewise supports its rate with some evidence.  Neither side, however, has offered argument and evidence that both (1) displaces the other party's position and (2) strongly suggests that its proposed rate is fairer than the statutory rate.

Finally, this case evokes or directly involves legal doctrines that usually fall under the six-percent rubric — even though the claim itself is restitutionary in nature.  UNG's damages were dependent on its proving that Aon committed a tort.  The largest measure of damages here derives from the provisions of a contract that was, in part, rescinded as the result of Aon's tortious conduct.  These facts support the appropriateness of the court's subscribing, in the exercise of its discretion, to the prejudgment interest rate that

13.

prevails in contract and tort claims. That rate appears the most just, as it would represent the most established, predictable, and appropriate rate for a case of this kind.

C.      What Damages Are Subject to a Discretionary Award of Interest

        UNG seeks interest on its entire damages award of $23,872,126, which includes the jury's award of attorneys' fees and costs from the UNG-RAS arbitration. Aon contends that UNG calculated interest from incorrect starting points for a portion of the damages, Def. Mem. at 21-22, and that interest on the arbitration fees and costs is inappropriate and unjust, *id*. at 22-23. Aon urges the court not to consider more than $16,871,596 of the damages if the court decides to grant interest. *Id*. at 24.

        The court has reviewed the Affidavit of Thomas M. McGeehan, UNG's Chief Financial Officer, as well as Exhibit 1 of that affidavit which provides considerable detail on how UNG calculated its requested interest award at the statutory rate. The methodology employed by UNG is sound in that UNG seeks interest only from the points in time at which its various damages claims accrued. *See McClure v. Deerland Corp.*, 585 A.2d 19, 22 (Pa. Super. Ct. 1991) ("Claims for indemnification arise only when the party seeking indemnity has made a payment on the underlying claim."). The calculations are painstaking and detailed. Aon appears to challenge these calculations, but then, in a footnote, seems to acknowledge that the calculations were properly undertaken. Def. Mem. at 22, 22 n. 8 ("To award interest on money before it was even paid would be wrong. [footnote] UNG impliedly admits this point, by basing its prejudgment interest

14.

calculation on the dates of actual payment rather than strictly on October 1, 2002 as the start date.").

The damages on which interest will be granted will include the attorneys' fees and costs incurred by UNG in connection with the arbitration.  UNG's successful claim in this suit was for indemnification, which in Pennsylvania permits a plaintiff to recover expenditures from an earlier defense against the claims of the harmed third party.  *See, e.g., Boiler Eng'g & Supply Co. v. Gen. Controls, Inc.*, 277 A.2d 812, 814 (Pa. 1971). Here, the costs of the arbitration were an obvious and significant component of the recovery that UNG sought from Aon.  In terms of making the plaintiff whole, a consideration common to both the *Richards* and restitution theories, interest on the large sums expended by UNG in defending itself from RAS's claims is warranted.  Aon's arguments that such an award is "twice removed from the merits" and constitutes a form of punitive damages are unpersuasive.  Pennsylvania courts do not appear to consider fees and expenses from earlier defenses to be some form of secondary recovery or an unwarranted 'add on' in indemnity suits.  *Orth v. Consumers' Gas Co.*, 124 A.2d 296, 297 (Pa. 1924) ("...where the wrongful acts of the defendant have involved the plaintiff in litigation with others, or placed him in such relations with others as to make it necessary to incur costs and expenses to protect his interests, such costs and expenditures should be treated as legal consequences of the original wrongful act."). Further, the review undertaken here does not involve any of the elements that support punitive awards, nor

15.

has UNG argued any such considerations.

III.   **<u>Conclusion</u>**

For the reasons stated above, the court will grant plaintiff's motion and add

prejudgment interest, calculated at the statutory rate of six percent, of $8,299,984.59 to

the jury's award of $23,872,126.00 in damages.  This will result in a total judgment for

UNG of $32,172,110.59.