**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED NATIONAL INSURANCE CO., et al.,<br><br>           Plaintiffs,<br><br>   v.<br><br>AON LTD., et al.,<br><br>           Defendants. | Civ. No. 04-539 |

**OPINION**

July 24, 2009                                                                    Pollak, J.

        In this diversity action, defendants (hereafter "defendant" or "Aon"), a group of

English corporations, have submitted a post-trial Motion for Judgment as a Matter of Law

or for a New Trial (docket no. 217) and a memorandum supporting the motion (docket no.

228).  Plaintiffs (hereafter "plaintiff" or "UNG"), a group of American corporations, have

responded (docket no. 233), and Aon has submitted a reply (docket no. 235).  The motion

is ripe for disposition.

I.

        I will forego a recitation of the facts and procedural history of the case because this

opinion is being filed contemporaneously with the court's decision on plaintiff's Motion

to Alter or Amend the Judgment (docket no. 216), which contains an appropriate

1.

summary.

II.

**A.    Legal arguments for judgment as a matter of law**

A district court may grant judgment as a matter of law under Rule 50 if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally-sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). A party must move for this remedy prior to submission of the case to the jury. *Id*. After the entry of judgment, the moving party may renew its motion. Fed. R. Civ. P. 50(b).[1] Based on the language of the rule itself, Rule 50(b) motions tend to challenge whether the trial record contained sufficient evidence to support the jury verdict, and, as stated in greater detail below, the moving party bears a heavy burden in order to prevail in that context. However, a party may, as Aon has done here, base part or all of its Rule 50(b) motion on an alleged error of law. The district

---

[1] The rule reads as follows:

If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
(1) allow judgment on the verdict, if the jury returned a verdict;
(2) order a new trial; or
(3) direct the entry of judgment as a matter of law.

court reviews such contentions "on a purely legal basis that does not depend on rejecting the jury's findings on the evidence at the trial." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009).

1.    *Availability of indemnification as a cause of action*

Aon argues that UNG's indemnification claim is not available, as a matter of law, because that doctrine is strictly a "a fault-sharing mechanism ... available only to recover an award of *damages*" and cannot be applied to a situation where a third party obtained rescission of a contract.  Def. Mem. at 4-5 (emphasis in original).  Aon previously lodged this argument in its Motion to Dismiss (docket nos. 28, 31); this court denied the motion (docket no. 40).  Aon does not appear to have raised this issue in its Rule 50(a) motion to the court.  Trial Transcript at 6019-6036, Un. Nat'l Ins. Co. v. Aon Ltd., Civ. No. 04-539 (E.D. Pa. 2008) ("Tr. Trans.").

"The rule that a post-trial Rule 50 motion can only be made on grounds specifically advanced in a motion for a directed verdict at the end of plaintiff's case is the settled law of this circuit." *Kutner Buick, Inc. v. Am. Motors Corp.*, 868 F.2d 614, 617 (3d Cir. 1989).  Accordingly, Aon is foreclosed from making this argument in its Rule 50(b) motion.  At all events, the court stands by the reasoning advanced at the March 22, 2005 hearing when it denied this ground for Aon's motion to dismiss.  Further, *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351 (5th Cir. 2008), relied on considerably by Aon in its Rule 50(b) motion, is unhelpful here as the court in *TIG* was not applying the law of

3.

Pennsylvania, which governs this diversity case, but Texas's rather restrictive common law indemnification doctrine.

2.    *Applicability of the Restatement (Second) of Torts § 552 to this suit*

Aon argues that, in the wake of *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005), and the subsequent case law, UNG's negligent misrepresentation theory of liability must fail as a matter of law.  Aon has advanced this argument in some depth on prior occasions (*see* Def. Mem. in Support of Motion for Sum. Judg. (docket no. 72-2) at 17-21; Def. Mem. in Support of Motion for Interlocutory Appeal (docket no. 100)), and on each occasion I have found the argument unpersuasive. I remain of the view that (1) Section 552 of the Restatement (Second) of Torts has pertinent application to this case, and (2) grounds exist for finding that Aon owed a duty to RAS.  *See* Transcript of Hrg. on Mot. for Sum. Judg., Un. Nat'l Ins. Co. v. Aon Ltd., Civ. No. 04-539 (E.D. Pa. Feb. 13, 2008); Mem. of Apr. 7, 2008 (docket no. 108).

Aon makes much of the Third Circuit opinion in *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162 (3d Cir. 2008), asserting that it forecloses UNG's theory of liability.  I find the argument unpersuasive.  The Third Circuit in *Sovereign Bank* determined that, in *Bilt-Rite*, "The Pennsylvania Supreme Court never suggested that it intended to severely weaken or undermine the economic loss doctrine ....  It simply carved out a narrow exception when losses result from the reliance on the advice of professionals."  533 F.3d at 177-78.  This court notes that the plaintiff in *Sovereign Bank*

4.

did not bring a § 552 claim against the defendant; instead, the plaintiff sued on a more

general negligence theory and pointed to *Bilt-Rite* as support for its contention that the

negligence claim was not barred by the economic loss doctrine. *Id.* at 175-76.  The Third

Circuit stated that the realm of *Bilt-Rite* and § 552 was "simply not our case" and that

economic loss squarely applied. *Id.* at 177-78.  Accordingly, this court finds little

guidance in *Sovereign Bank* regarding the application of § 552 in Pennsylvania.

**B.     Insufficiency of evidence arguments for judgment as a matter of law**

"Entry of judgment as a matter of law is a sparingly invoked remedy," *Marra v.*

*Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (internal quotation omitted).  More

specifically, as regards arguments of insufficient evidence, the Third Circuit directs:

> Such a motion should be granted only if, viewing the evidence in the light
> most favorable to the nonmovant and giving it the advantage of every fair and
> reasonable inference, there is insufficient evidence from which a jury
> reasonably could find liability.  In determining whether the evidence is
> sufficient to sustain liability, the court may not weigh the evidence, determine
> the credibility of witnesses, or substitute its version of the facts for the jury's
> version.

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (internal citations

omitted).

First, Aon contends that, on the record evidence, no reasonable jury could have

found that Aon was "in the business of supplying information" such that it could be found

liable under § 552.  Def. Mem. at 17.  Aon argues that it served exclusively, and overtly,

as a representative for UNG and ferried information between its client and RAS — but at

no time professionally developed or furnished information for RAS's consideration.

The record, however, contains ample evidence from which a jury might reasonably conclude that Aon was in the business of supplying information as a primary component of its broking duties, and not merely a messenger. For example, after broadly outlining how Aon gathered, compiled, and presented various pertinent statistics of the contractor's program, David Warman, an Aon manager, stated that "I regard it as my job even now to make sure that everything we feel as a broker that needs to be shown to an insurer, that we believe he needs and wants to have to evaluate the risk, needs to be presented." Tr. Trans. 1082:18-22. Warman went on to say, "It is a requirement of every broker that I worked for, including [Aon], to ensure that when a broker provided the information to the underwriters that the broker provided all the information that he felt that the underwriter needed to assess the risk. A broker could take an independent, individual judgment on what that meant with each underwriter ...." Tr. Trans. 1088:6-12. Even these two brief excerpts of testimony from one witness demonstrate that the jury could reasonably infer that Aon served as an information supplier as a part of its overall job to represent UNG in obtaining reinsurance.[2]

---

[2] In another instance, Derek Toms, a Howden officer involved with the contractor's program, was questioned by UNG about whether Aon ever "tweaked" figures that were presented to potential reinsurers. His responses, though denying the notion of improper "tweaking," do suggest that Aon did more than simply deliver information provided to it by its client. Here is an example:

It's difficult to remember. I don't think anything like this happened very often.

6.

Second, Aon contends that no reasonable jury could conclude that Aon furnished information for the guidance of RAS, in the sense that Aon was "'guiding' the decision-making of the person to whom the information [was] supplied." Def. Mem. at 23. Aon argues that RAS did not seek or expect decision-making guidance from Aon and that Aon never intended to guide RAS. Aon further contends that UNG relied on "testimony taken out of context" to establish the guidance element of its § 552 claim.

I find that the jury was reasonable in determining that "[Aon], acting as [UNG's] agent, supplied false information to RAS for the *guidance* of RAS in RAS's business transactions." Jury Instr. at 10 (docket no. 197) (emphasis added). As plaintiff points out, Pl. Mem. at 22-23, there was considerable testimony to suggest that Aon intended to guide RAS in its decision-making process by compiling and presenting information and statistics for RAS's review — and that RAS looked to Aon, as a trusted broker, to provide information that would guide its underwriting decision. While it is the case that much of the testimony pointed to by UNG is that of Aon employees merely acquiescing in verbal

---

What I would say is that if, for example, an assured might have had some operations which had been discontinued, it might have presented — prepared a set of figures which showed the loss record as it stood, and then maybe a loss record with such discontinued operations excluded from it, and we would state that on the documents we prepared, you know, you've got a set of figures on such a basis and an alternative basis.

Tr. Trans. at 1277:9-18. What Toms describes, though hypothetical in nature, involves analysis, selection, and presentation of data by Aon. It would not be unreasonable for a jury to interpret such testimony as evidence that Aon was in the business of furnishing information.

7.

formations provided to them by plaintiff's counsel,[3] this does not dispose of or undermine the weight the jury may, properly, have given such testimony.  Further, Aon had ample opportunity to seek to redirect these characterizations and to clarify and redefine the issue.  Aon, in briefing this challenge to the verdict, has invoked the favorable testimony of certain witnesses.  Def. Mem. at 28 ("key RAS witnesses definitively reject[ed] any notion of 'guidance.'").  In doing so, however, Aon recognizes that the record contains the contrary testimony — whether it considered such testimony weighty or not.  *Id.* ("The testimony of these witnesses is insignificant when compared to the testimony of Wardlaw ...").  Accordingly, pursuant to the instruction in *Lightning Lube*, 4 F.3d at 1166, I conclude that the verdict is "supported by legally sufficient evidence."

Third, Aon argues that no reasonable jury could have concluded, from the

---

[3]  For example, in its memorandum, UNG states that "Charles Wardlaw, the creator of the Contractors Program, testified that 'a reinsurer is entitled to be <u>guided</u> by these statistics .... [That's] the whole point of giving statistics to a potential reinsurer.'" Pl. Mem. at 22 (quoting Tr. Trans. at 4388:18-23).  The pertinent testimony reads as follows:

> MR. KATZ [plaintiff's counsel]: And Mr. Wardlaw, when a reinsurer makes a decision, it's entitled to rely on the accuracy of the statistics that you as a broker are giving them, correct?
> MR. WARDLAW: Yes.
> KATZ: And a reinsurer is entitled to be guided by these statistics, isn't he?
> WARDLAW: Yes.
> KATZ: In fact, isn't that the whole point of giving statistics to a potential reinsurer?
> WARDLAW: Yes.

Tr. Trans. at 4388:13-23 (speaker names added).  *Compare also* Pl. Mem. at 23 (discussing testimony of Sir Alan Traill) *with* Tr. Trans. at 4766:23 - 4767:3.

8.

evidence presented, that defendant was the sole wrongdoer.  Def. Mem. at 28.  The jury

found Aon 100% liable for the harm caused to RAS and granted UNG "a verdict of

indemnification."  *Id*.  Aon contends that a reasonable jury would be compelled to

conclude that, if Aon failed to disclose information, UNG "either (a) played a role in the

nondisclosure, or (b) had as much, or more, knowledge of the facts than [Aon] did, yet

failed to disclose those facts to RAS, either directly or through [Aon]."

The record does contain evidence that might support a conclusion that UNG was at

fault.  As Aon points out, UNG officers had particular documents that they did not

expressly share with Aon or RAS.  *See* Def. Mem. at 33 (describing memoranda on the

contractor's program written by underwriter Joanne Pawulack that were not disseminated

to the broker or reinsurer and that concluded that premiums charged to insured were too

low).  This evidence, however, is not so overwhelming as to compel, as a matter of law, a

finding of fault by UNG.

Instead, the record also suggests that the jury's conclusion — that UNG met its

responsibilities and did not breach the duty it owed to RAS — was supported by

sufficient evidence.  UNG appears to have shared its concerns and developing

conclusions about the contractor's program with Aon.  For example, in a letter to Aon

regarding the program, Joanne Pawulack wrote, *inter alia*, that premiums charged to

insureds should be increased and "[t]he loss experience we are looking at in our opinion

no way represents the final outcome."  Trial Exh. 517.  This letter was contemporaneous

9.

with the development of the internal memoranda that Aon points to as proof that UNG

breached its duty.  This and other evidence could convince a reasonable jury that UNG

took proper steps to inform its broker and reinsurers of the problems with the program.[4]

Fourth, Aon asserts that "[t]he overwhelming weight of the evidence presented at

trial demonstrated that UNG and Gay & Taylor had a master-servant relationship," Def.

Mem. at 35, and that no reasonable jury could have found otherwise.[5]  Aon contends that

---

[4]  Aon also argues that UNG could not be found faultless because, essentially, it bore responsibility for overseeing and controlling all aspects of the insurance and reinsurance arrangements at issue here.  Def. Reply at 25 ("[UNG] was not entitled to lend its name to the Program, pocket its fronting fee, and then do nothing (except whimper that [Aon] 'dominated' the Program...")).  To the degree that this argument suggests that the jury was obligated to find fault with UNG for not correcting Aon's improper conduct, regardless of whether UNG breached any duty to RAS or committed any other negligent or intentional wrongdoing, the argument ignores the doctrine of indemnity on which this suit was based.  *See Kaminski Bros.*, 804 A.2d at 92 ("Indemnity ... shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault."); *Builders Supply Co. v. McCabe*, 77 A.2d 368, 370 (Pa. 1951) ("Secondary liability exists, for example, where there is a relation of employer and employee, or principal and agent; if a tort is committed by the employee or the agent recovery may be had against the employer or the principal on the theory of *respondeat superior,* but the person primarily liable is the employee or agent who committed the tort, and the employer or principal may recover indemnity from him for the damages which he has been obligated to pay.").  Further, Aon did not defend itself on a theory that (1) Aon committed wrongs and (2) UNG failed to properly supervise Aon and quash such wrongs.

[5]  At trial, Aon argued that Gay & Taylor, the "Third Party Administrator" to the contractors program which managed claims reserving, was responsible for the misrepresentations to RAS and served as an agent to UNG, thus making UNG responsible for any of Gay & Taylor's wrongful actions.  *See* Jury Instr. at 13.  The jury was first asked whether Gay & Taylor was an agent of UNG's; if so, the jury would have to evaluate whether Gay & Taylor had committed negligent misrepresentation in its dealings with RAS.  *Id.* at 14-16.  The jury determined, on the threshold question, that Gay & Taylor was not UNG's agent.  Jury Verdict ¶ 3(a).

the written Claims Handling Procedures, Trial Exh. 214, establish an agent-principal relationship between Gay & Taylor and UNG, as did the 1992 Reinsurance Treaty between UNG and Generali, Trial Exh. 354, which "permitted UNG to dismiss Gay & Taylor and appoint new adjusters."  Def. Mem. at 37.  Defendant further argues that UNG had a financial stake in the proper oversight of Gay & Taylor and that many of the witnesses testified that Gay & Taylor "worked for [UNG] and other underwriters...."  Def. Mem. at 38.  UNG contends, *inter alia*, that Aon failed to preserve this issue in its Rule 50(a) motion.

Aon did preserve this objection, so it is properly before the court.  See Tr. Trans. at 6034:8-13 ("United National had a duty to supervise Gay & Taylor.").  The objection does not, however, merit setting aside the jury's verdict.  The evidence shows that UNG had rights and powers regarding the work of Gay & Taylor, but it does not show unequivocally that UNG had a right to control the actions of Gay & Taylor regarding its role as Third Party Administrator during the period at issue in this suit.  In fact, the evidence may be understood as establishing that Generali, a major reinsurer of the contractor's program, controlled Gay & Taylor.  *See, e.g.,* Trial Exh. 1070 at 9-10 ("[UNG] agrees to utilize adjustors and defense counsel to handle claims as directed by the Reinsurer [Generali] from time to time.").  Aon's argument that Gay & Taylor served as a "servant of two masters" or "dual agent" to both UNG and Generali, Def. Mem. at 36-37, does not obviously merit relief on this motion; determination of the issue would

11.

require the kind of weighing of the evidence that is impermissible under Rule 50 review. Accordingly, I will uphold the jury's verdict on this point as well because the verdict is not contrary to the evidence.

Fifth and finally, Aon contends that the evidence was insufficient to support the jury's finding of causation. To find Aon liable, the jury had to determine "[t]hat the receipt by RAS of false information supplied by Howden caused RAS financial loss." Jury Instr. at 10. Aon argues that "the evidence overwhelmingly demonstrated that there were other factors at work — most notably the challenging industry conditions in construction defect insurance — that caused RAS's losses in the Contractors Program." Def. Mem. at 39-40. UNG again argues that Aon failed to preserve this argument in its Rule 50(a) motion.

The court agrees that, under the standard of *Kutner Buick*, 868 F.2d at 617, stated *supra*, Aon is barred from presenting this argument. Aon's response that it adequately "flagged this position," Def. Reply at 31 n. 13, is unpersuasive because the transcript of the oral Rule 50(a) motion reveals no clear notice of this issue to the plaintiff. The transcript segments cited by the defendant are in support of its argument on whether Aon bore any duty to RAS, a different issue that defendant did present in its Rule 50(a) motion. Though a merits analysis is not warranted, I find that the record contains ample evidence to support the jury's decision on this element of § 552. For example, UNG presented testimony that the so-called Supplemental Package, Trial Exh. 400, was not

12.

provided to RAS.  This could, quite reasonably, lead the jury to conclude that RAS might

not have participated in the contractor's program, and thus not faced financial losses, had

it received this information.

**C.     Motion for a new trial**

"The court may, on motion, grant a new trial on all or some of the issues ... after a

jury trial, for any reason for which a new trial has heretofore been granted in an action at

law in federal court...."  Fed. R. Civ. P. 59(a)(1).  The decision whether to grant a new

trial following a jury verdict is within the discretion of the district court and such requests

are disfavored.  *See, e.g., Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353

(3d Cir. 1991) ("new trials because the verdict is against the weight of the evidence are

proper only when the record shows that the jury's verdict resulted in a miscarriage of

justice or where the verdict, on the record, cries out to be overturned or shocks [the]

conscience").

1.     *Admission of evidence of "pure omissions"*

Aon challenges the admission of evidence showing that Aon omitted certain

information in its presentations to RAS.  UNG made use of such evidence as part of its

argument that Aon committed the tort of negligent misrepresentation.  Aon argues that

omissions meeting the standard established by § 551 of the Restatement (Second) of

Torts[6] do not apply to claims brought under § 552 of the Restatement (Second) of Torts.[7]

Defendant goes on to contend that the admitted evidence did not meet the "partial

———————————————————

[6] The Restatement (Second) of Torts § 551, "Liability for Nondisclosure," reads as follows (§ 551 of the first Restatement is substantially similar):

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
  (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
  (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
  (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
  (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
  (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

[7] The Restatement (Second) of Torts § 552(1) reads in pertinent part:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

14.

statement" nexus required under § 551(2)(b) or the "basic facts" requirement of §

551(2)(e).

I addressed this area of objection to a substantial degree in a ruling on pretrial

motions *in limine*.  *See* Memorandum of Aug. 7, 2008 at 1-12 (docket no. 140).  I

incorporate that decision here.

It is long settled in Pennsylvania that, under appropriate circumstances, a person or

entity can be held liable for nondisclosures in a commercial transaction, and that such

nondisclosures can, alternatively, be described as actionable misrepresentations.  *See, e.g.,*

*Neuman v. Corn Exch. Nat'l Bank & Trust*, 51 A.2d 759, 764 (Pa. 1940) (stating, in an

action for deceit, that "deliberate nondisclosure of a material fact amounts to culpable

misrepresentation no less than does an intentional affirmation of a material falsity...")

(citing Restatement (First) of Torts § 551).  UNG did not sue Aon on a theory of

intentional tort.  However, I found, and continue to find, that the § 551 framework for

establishing whether an omission qualifies as an actionable misrepresentation is

appropriate to the legal theory UNG did employ.[8]  Evidence that appeared to meet the

requirements of § 551(2)(b) or (2)(e) was admitted by the court as relevant to the first

element of UNG's § 552 misrepresentation theory; it was also properly considered by the

---

[8]  "UNG contends that in order to place the reinsurance with RAS, [Aon] severely
misrepresented the risk. [Aon] did this by, among other things, presenting RAS with
information it knew to be false, incomplete and misleading so that, instead of seeing a
program doomed by crippling losses, RAS would see what appeared to be a highly
profitable piece of business."  Pl. Pretrial Memorandum at 2 (docket no. 107).

jury.  *See* Jury Instr. at 10 ("information that is accurate, but incomplete, may be 'false information' if the lack of completeness makes the information that has been supplied misleading.").

As to Aon's contentions regarding the "partial statement" nexus and the "basic facts" element, I will rely on the decision in the Mem. of Aug. 7, *supra*.  Concerning § 551(2)(b), that ruling stated that "on the basis of the information omitted, a jury could conclude that Aon's packages of information stated the truth so far as it went, but were misleading because they failed to state necessary qualifying material."  *Id*. at 10.  Further, concerning § 551(2)(e), the opinion stated that "[b]ecause the question of whether these disclosures concerned facts basic to the transaction depends so heavily on contested descriptions of industry custom, the court must present the issue to the jury."  *Id*. at 12.  Presenting the issue necessarily required admitting the evidence.  Finally, the section of the jury charge concerning UNG's claim of negligent misrepresentation by Aon contained the elements necessary to guide the jury on what kinds of omissions would be actionable and which would not.  *See* Jury Instr. at 10-11.

Aon's contention regarding § 551(2)(b) that "[t]his is not a case of partial or ambiguous statement, but rather a case of silence," Def. Mem. at 44, is unpersuasive based on this court's earlier reasoning.  Aon's argument regarding § 551(2)(e) rests on a definition of "basic facts" that strikes me as considerably narrower than intended by the Restatement or by the Pennsylvania Superior Court in *Youndt v. First Nat'l Bank of Port*

*Allegany*, 868 A.2d 539, 551 (Pa. Super. Ct. 2005), in applying that provision.

        2.     *Alleged inadmissible evidence*

Aon describes a good deal of trial evidence that it contends was clearly inadmissible under the Federal Rules of Evidence.  First, defendant argues that evidence suggesting its wrongful conduct which did not appear in the arbitration record is inadmissible under Pennsylvania's law of indemnification.  Second, Aon contends that facts and statements dating from after the period of the reinsurance contract at issue are inadmissible.  Third, defendant challenges the testimony of Kevin Kennedy as irrelevant and overly-prejudicial as well as inadmissible as non-expert opinion.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  "All relevant evidence is admissible, except as otherwise provided by" the Constitution, federal statutes, or federal judicial rules.  Fed. R. Evid. 402.  It is well established that the Rule 401 definition of relevance should be construed broadly and that federal district courts have considerable discretion when making relevance determinations.  *See, e.g., Moyer v. Un. Dominion Indus., Inc.*, 473 F.3d 532, 542 (3d Cir. 2007).  In terms of the immediate review, and the review of Aon's other evidentiary arguments for a new trial, this court proceeds as follows:

> When a party alleges that a new trial is based on the admissibility of
> evidence, the trial court has great discretion ... which will not be disturbed

> ... absent a finding of abuse.  A new trial will not be granted for an error
> that does not affect the substantial rights of the parties because such error
> is harmless.  A court determines whether error is harmless by considering
> the centrality of the evidence and whether including or excluding the
> evidence was prejudicial.  The party contending that the inclusion or
> exclusion of evidence was in error has the burden of showing that the court
> ruling affected the result of the trial.

*Winters v. Marina Dist. Dev. Co.*, Civ. A. No. 05-5937, 2008 WL 1745588, at *2 (E.D.

Pa. Apr. 16, 2008) (internal quotation marks and citations omitted).

Aon's arguments for a new trial are unpersuasive.  To the first point, UNG sought

to prove that Aon, serving as UNG's agent, committed negligent misrepresentation

against RAS, which precipitated UNG's losses from the arbitration.  The challenged

evidence was relevant to that theory and is not foreclosed by Pennsylvania's law of

indemnity.  Second, I continue to find relevant and admissible the evidence that arose

after the period of the contract but which concerned or described activity by the various

players during the period of the contract.  Third, Kevin Kennedy's testimony was

relevant, permissible, and appropriately admitted under Rule 403.  Kennedy was involved

in the effort to reinsure the contractor's program; his first-person testimony of his

experience, conclusions, and actions was relevant.  I do not perceive that Kennedy

delivered improper opinion testimony, and I reaffirm my decision regarding the

admissibility of Kennedy's testimony of the threat of further litigation allegedly lodged by

counsel for the defendant.  *See* Mem. of Sept. 19 at 4-7.

      3.       *Alleged improper exclusions*

Defendant next lists evidence that this court "improperly excluded ... unfairly prejudicing Aon."  Def. Mem. at 55.  This evidence includes the following: alleged admissions by UNG, excluded in the Memorandum of Sept. 18, 2009 at 2-4 (docket no. 152); portions of the testimony of Aon expert William Barbagallo, excluded in the course of Barbagallo's appearance before the jury; and deposition excerpts wherein different deponents discussed the concept of whether Aon had a "special relationship" with or offered "special guidance" to RAS, excluded in the Memorandum of Sept. 19 at 1-3 (docket no. 153), decisions which were affirmed in the Memorandum of Sept. 26, 2008 at 2-3 (docket no. 156).

Regarding the first and third groups of evidence, I have reviewed the rulings in the Sept. 18, 19, and 26 memoranda and find no error.  In addition, concerning Aon's argument that exclusion of testimony regarding whether Aon gave "special guidance" to RAS undermined a core component of the defense, Def. Mem. at 61-62, I find that the trial transcript is full of testimony and argument in Aon's case regarding guidance as an element of UNG's § 552 claim.  This strongly suggests that these exclusions, while warranted, were also non-prejudicial.

Regarding the exclusion of part of Barbagallo's testimony, I will affirm my decision during the trial.  Aon stated that Mr. Barbagallo "will testify regarding the reasonableness of the Gay & Taylor reserving methodology ... and the limited role played by the broker in reserving procedures decided upon by the third party administrator."

Def. Pre-Trial Memorandum at Rider A § C(1) (docket no. 109).  I permitted Mr.

Barbagallo to offer expert opinion on claims handling and reserving.  This did not include

opinions on "the role of a reinsurer[,]"  Tr. Trans. at 5558:23-24, even opinions on how

such an entity may review claims handling and reserving.  Accordingly, I find no error in

my decision not to "permit Mr. Barbagallo to testify regarding actions that a prudent

reinsurer would take regarding the investigation of claims and claims handling

procedures, including reserving practices."  Def. Mem. at 58.

      4.    *Alleged infirmities in the jury instructions*

     Next, Aon argues that a new trial is warranted due to various alleged

misinstructions of the jury.  I will address each in turn, applying the following standard:

> A jury instruction is reviewed to determine "whether the charge, taken as
> a whole and viewed in light of the evidence, fairly and adequately
> submit[ted] the issues in the case to the jury."  *Link v. Mercedes-Benz of
> North America, Inc.*, 788 F.2d 918, 922 (3d Cir. 1986).  A court's review
> of a jury instruction should be undertaken with an eye towards the
> instructions in their totality and "not a particular sentence or paragraph in
> isolation."  *In re Braen*, 900 F.2d 621, 626 (3d Cir. 1990)....  In addition to
> showing that the Court committed legal error in giving a certain
> instruction, a party must also show that the error had a prejudicial effect.
> *Advanced Displays Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1281
> (Fed. Cir. 2000).  Prejudicial legal error exists where it "appears to the
> court [that the error is] inconsistent with substantial justice."  *Id.* (citing
> Fed. R. Civ. P. 61).

*Nunez v. Temple Prof'l Assocs.*, Civ. A. No. 03-6226, 2005 WL 3441226, at *5 (E.D. Pa.

Dec. 14, 2005).

     Aon first contends that the court's recitation that "[b]oth United National and

[Aon] have alleged that each owed a duty of utmost good faith and fair dealing to RAS in this connection" was erroneous and prejudicial because it "mischaracterized UNG's cause of action in this case" and "led the jury to believe that they could hold Aon liable if Aon breached 'a duty of utmost good faith and fair dealing to RAS.'" Def. Mem. at 63.  On their face, the challenged lines within the jury instructions, which lie in a section titled "How This Lawsuit Arose" prior to the section titled "The Governing Legal Principles," do not accomplish the end alleged by Aon in its motion.  Jury Instr. at 6-9.  Further, review of the instructions as a whole reveals that the jury was closely instructed on the elements of UNG's § 552 theory of Aon's liability, which did not include any reference to allegations of a duty of utmost good faith.  *Id*. at 10-11.

Aon next contends that "[t]he jury was misinstructed as to the nature of the wrongs alleged to have been committed by UNG, the burden of proving those wrongs, and the elements of those wrongs."  Def. Mem. at 65.  On the first point, Aon suggests that the jury instruction regarding possible wrongdoing by UNG conflated the tort of negligent misrepresentation with Aon's intended claim that UNG breached its duty of utmost good faith.  I do not perceive from the jury charge that any such conflation was likely; even if it were possible, such conflation would be harmless in light of the clarity of the three numbered elements comprising Aon's claim, which were substantially different from the

elements of the § 552 negligent misrepresentation charge.[9]  Jury Instr. at 12-13.

Regarding the second point, Aon complains that the court was not permitted, under Pennsylvania law of indemnity, to place the burden of proof on the defendant to establish a breach by UNG.  The court did not do so, as shown in the jury charge on indemnity where the jury was told that UNG had to prove, *inter alia*, by a preponderance of the evidence that UNG "was not at fault for the damage caused to RAS, either directly or through the wrongful acts of Gay & Taylor acting as United National's agent."  Jury Instr. at 17.

On the third point, Aon asserts that the negligence element included in the charge on possible wrongdoing by UNG was erroneous; the defendant instead suggests that the charge should have established a kind of strict liability standard.[10]  Def. Mem. at 68-69 ("the thing that triggers liability for breach of the duty of utmost good faith is the failure to disclose a material fact").  This assertion has no support in Pennsylvania law, and thus provides no ground for a new trial.

5.    *Omitted instructions*

Aon complains that it proposed jury instructions on two issues ("(a) the meaning of the element of 'guidance' under § 552 and (b) the scope of a broker's liability for

_____

[9]  UNG argues that Aon failed to properly object to this portion of the charge at trial, or otherwise waived objection.  I have not addressed those arguments in light of my conclusion on the merits.

[10]  UNG also argues that Aon waived this objection.  I have not ruled on this, as I find that Aon's assertion of legal error is unsupported by binding Pennsylvania law.

predictions, opinions and other forward-looking statements") and that the court erroneously decided not to include such instructions.  Def. Mem. at 70.  As the trial progressed, it did not strike me as necessary to provide a detailed description of the meaning of guidance in order to thoroughly instruct the jury on UNG's § 552 claim.  My conclusion is the same now.  Further, I cannot perceive how the lack of such additional instructions would prejudice Aon in a trial where both sides vigorously argued the predicate issue of whether Aon's role was to guide RAS in any way whatsoever.  Concerning the 'forward-looking statements' language, such an instruction never appeared central to the jury's determinations.  Given the seven elements that UNG had to prove to prevail on its § 552 claim, and the voluminous evidence and argument regarding whether the numerical information furnished by Aon to RAS was truthful and accurate, I am doubtful that Aon could have been prejudiced by a missing instruction on "recommendations or predictions."  Def. Mem. at 71.

　　　　6.　　*Insufficient evidence for the verdict*

　　　　Aon relodges its insufficiency argument under its arguments for a new trial.  For the reasons given in Part II(B) *supra*, the court will deny Aon a new trial on this ground.

III.

　　　　For the reasons stated above, Defendants' Motion for Judgment as a Matter of Law or for a New Trial (docket no. 217) will be denied.

23.